Okay, Mr. Vogeltans. Well, good morning, Your Honors. May it please the Court, my name is Kevin Vogeltans. My client is Tim Spencer. We're here today on two broad legal issues, one's procedural, one's substantive. Procedurally, the issue is when ought a district court give a plaintiff leave to amend before dismissing his case with prejudice, and the substantive issue is ultimately what is an employer's legal obligation to reasonably accommodate a religious objector in the workplace, principally under this Court's prior decision in Brough v. Northern Mississippi Social Services. I'd like to take up the substantive issue first because if the Court agrees with me that the district court erred just on the merits of that issue, the amendment issue is mooted. So, and when I couch my argument here, I'm going to do my very best to stick to just the allegations that Mr. Spencer made in his original complaint, not any of the additional exhibits that Shell submitted to the Court in their motion to dismiss, and not any of the additional arguments or exhibits that Mr. Spencer filed in his opposition brief. But if we just stick with the complaint to try to do it properly, what we know is that Mr. Spencer, through his attorney, who, you know, look, this wasn't the best complaint I've ever seen in my life. I'm a full-time board-certified employment specialist in Louisiana, not a great complaint, I admit that. But the question was, was there enough meat on the bones under the law to get Mr. Spencer through the door? And there was. So he alleged that he had a religious objection to a Shell policy. He alleged that his request for reasonable accommodation was denied. He alleged in his original complaint that this denial cost him wages and other financial losses. He did not say that he was fired in his complaint, and we eventually learned later that he wasn't fired. He resigned to take another job so that he wouldn't be fired. What was his religion? He's Christian, Your Honor. He was discriminated against by being a Christian? He was discriminated against because under Title VII, Shell has a duty to provide a reasonable accommodation to any religious objector who cannot comply with the workplace policy because of that religious objection. It wouldn't matter if he was Muslim or Jewish or simply a person that had his own way of thinking about religion or a Christian. Shell owes obligation to those employees for their religious objections. And further, Mr. Spencer alleged that after he filed a charge of discrimination in the case, that Shell further retaliated against him by putting him on a performance improvement plan and ultimately saying, well, hey, look, now we're going to give you a date certain, where if you don't find another job or resign by this date certain, you will be fired. Okay. That's... But I let him work without the vaccination after a number of months, so I don't understand that. Well, I don't understand it either, Your Honor. In fact, I think that's a great case for a point for the plaintiff. So what we know about reasonable accommodations in the religious context is ultimately not nearly as much as we know about accommodations in the disability context. Honestly, the case law for religious-based accommodations is just less than what we have under the ADA. But what we do know, Your Honor, is that the only obligation a plaintiff has in this circuit in a religious discrimination case is to tell his employer, I have a religious-based objection to this workplace policy. Once the plaintiff does that, and this is this court's decision in Davis v. Fort Bend, once the plaintiff does that, the employer must provide a reasonable accommodation unless the employer can prove in affirmative defense that no accommodation is possible absent causing what the Supreme Court has now told us in Groff v. DeJoy last year, a substantial hardship in the context of the entire employer's business. I don't think anyone doubts that that is the law. The problem in this case, as I see it, is much more specific. That's as I read the complaint, I see pled that he was given the opportunity to find a different position over several months. And then when I look at Brough, which you brought up, I see that, I mean, that can be a reasonable accommodation. There's lots of facts I don't know, but I do see that pled in the complaint. And so that's my problem. Well, you hit the nail on your head, Your Honor, so let's just talk about Brough. This court is going to have a choice to make when it rules in this case. If this court decides to resolve this case on the issue of Brough and what an employer is allowed to offer as a minimally sufficient reasonable accommodation, and if this court endorses the idea that Schell has argued and that the district court accepted that, according to Brough, if an employer just gives any employee with any objection sixty days to find another job or be fired, then this court will have effectively gutted Title VII. Yeah. I mean, look, frankly, I agree with you. That's not what Brough means. And so I would never, ever sign on to that understanding of Brough. But that's not what Brough, I mean, Brough is much more nuanced than that. Yes, Your Honor. Because the person in Brough, like, was given all these chances, didn't take a lot of chances, didn't agree to look for other positions or agree to apply for the positions. So Brough is much more nuanced than that. And yet, I have to go here on what's been pled. Well, before I get over to the amendment issue, let me just say this about Brough and what was pled. This court has held for, in the context of 12b-6, that if a district court is going to dismiss a complaint based on a defendant's purported affirmative defense, which is what providing a reasonable accommodation is in the Title VII jurisprudence, then this court has said it must be so unquestionably obvious and unassailable from the pleadings that there could be no possible resolution other than to say, yes, of course, you have this affirmative defense and you're dismissed. Now, of course, in Mr. Spencer's complaint, he doesn't get into the affirmative defense issue. He just says, well, they gave me a period of time to look for something else. So the only way that the court, the district court, could have decided that Shell so unquestionably honored its obligations under Title VII was that the district court essentially had to endorse the idea, which it did, that under Brough, if you give an employee a certain stretched amount of time to find another job or be fired, that's good enough. And that simply is not what Brough said. And it can't be the law. And it isn't the law. And as Your Honor has pointed out, the fundamental difference between the recalcitrant plaintiff in Brough and Mr. Spencer is that in Brough, the employer gave the employee the opportunity to take a different job that would have fully resolved her objection and allowed her to continue in her counseling profession. And she rebuffed it. She said, I don't want to do that. There's no allegation in Mr. Spencer's complaint that anything like that happened. There's no allegation in Mr. Spencer's complaint that Shell offered him any job. In fact, he says the opposite. He says that Shell put the onus on him to find another job. So the case is already wildly different than Brough. And because Mr. Spencer didn't allege the necessary predicate facts that Shell needed to rely on, even if it wanted to try to prove its affirmative defense, it was error for the district court to essentially dismiss Mr. Spencer's complaint based on that purported affirmative defense. I would like to say before I switch over to the amendment, just a couple of highlights. This court has said in EEOC v. Universal Manufacturing that the question of whether or not an accommodation is reasonable or not, the question of whether ultimately Shell was reasonable when it gave Mr. Spencer a certain period of time to find another job, that's a question of fact. According to this court in Universal Manufacturing, that question of fact is ordinarily left to the jury. That's another reason why we wouldn't typically think that that resolution would happen on 12b-6. And we also know that under Brough v. DeJoy, if we just open our minds for just one moment to the nature of the defendant here, if it's true that a defendant can only prove their affirmative defense if they show that the accommodation would be substantially impactful to their entire business, Shell has done nothing in their motion to dismiss, produced no evidence whatsoever in their motion to dismiss, that would come close to satisfying the Brough v. DeJoy standard by showing that what was happening, if they allowed Mr. Spencer to continue working in the same job, Your Honor, that they apparently allowed him to do until he filed his EEOC charge of discrimination, that that would have been injurious to their business. Okay. If I could, I'd like to switch over to the amendment issue. So I like to think of myself as a practical attorney. I am sure that this court is not wild about the idea that when a represented plaintiff does not affirmatively request leave to amend, that the district court owes them anything. And what would you like us to write in an opinion on that point? Yeah. All right. So this is what I would propose, Your Honors. And I'm going to propose an actual idea, but to lead up to that, let me just say this. It's already well understood in this circuit that if a pro se plaintiff is going to be dismissed on 12 v. 6, the court almost always errs if they don't give that pro se plaintiff at least one opportunity to amend, because we understand that pro se plaintiffs, you know, they might need some time to gear up in the case. I would say, this is not to be clever, I would say that it is not clear to me what more Mr. Spencer's lawyer did for him than what Mr. Spencer could have done himself as a pro se plaintiff. I question the functional difference between the rule that allows a pro se plaintiff a guaranteed right to amend and a plaintiff who has poor representation at that stage of the case. But I would say this. This is not a case in which Shell, God bless them, came in and argued strictly what was in Mr. Spencer's complaint. And in fact, if they had done that, I would have had a much tougher time today. Shell, wanting to be too clever by half, came in and submitted seven factual exhibits in their motion to dismiss, which were outside the four corners of Mr. Spencer's complaint. And then they asked the district court to consider that additional factual evidence, which is really, under this court's jurisprudence, an invitation for the court to transform the 12b6 posture into a Rule 56 motion for summary judgment posture. But of course, if we're thinking that we're under Rule 56, what does Rule 56 tell us? Well, a plaintiff has to at least have some meaningful opportunity to conduct discovery if discovery is likely to prove a material issue of disputed fact. And of course, Mr. Spencer, the court didn't tell Mr. Spencer, his lawyer, that they could do that. So Shell is injecting all these new facts. And so what does Mr. Spencer's lawyer do? Well, finally, he comes in and he starts saying some stuff that puts more meat on the bones. And he says, finally—this is at record site 111—that Mr. Spencer had to take another job with this subsidiary Shell company, Shell Pipeline Company. He also attaches a—this is at, I think, Mr. Spencer's prior supervisor at SEPCO—that says that, yes, he has transitioned to Shell Pipeline. He's no longer with the company. So now we understand, okay, Mr. Spencer has had to resign. He did have to take another job. The denial of the accommodation did work a substantial hardship on him. If the district court now sees all of this—and it did—and if the district court acknowledges these facts, which it did in its first footnote in its opinion, then it seems to me that under any objective basis or standard that we could possibly apply, it's clear that in the terminology of this circuit, Mr. Spencer did not have an opportunity to plead his best case. Because in response to Shell's motion to dismiss and their introduction of additional facts, Mr. Spencer's now trying to introduce additional facts. And the rule that I would propose, although I'm sure you probably don't like me suggesting rules, the idea that I would propose, Your Honors, is that when a plaintiff is represented by counsel, if that plaintiff has not been given an opportunity to amend at least one time, and if it's objectively clear from the face of the briefing papers that the plaintiff is attempting to amend their case, then the district court ought to allow them an opportunity to amend before they dismiss. And to answer, I'm sure, what Your Honors' concern would be, well, Kevin, aren't we just basically going to create a rule that just says, well, you can't get dismissed anymore without leave to amend? I would say no, that's not the case, because in the great run of cases, the plaintiff will have pled their best case on the complaint and there will be nothing more for I would also say that the text of the federal rules, Rule 15, technically, textually does not require a plaintiff to ask the court for leave to amend. Rule 15a actually says that the court shall freely give leave when justice requires. It doesn't actually say, we'll only give the leave after it's been asked for. And I would say that based on all the surrounding facts and circumstances of the briefing papers here, it certainly seems the case that justice would require giving Mr. Spencer an opportunity for leave to amend. And then finally, going back to kind of this idea that I've suggested, you haven't been given an opportunity to amend. It's objectively clear that you haven't pled your best case. Inherent to that is the idea that you could say something additionally in your allegations that would overcome the motion to dismiss. And that's why, and I'm sure that everybody's eyes rolled when you saw two pages of proffered facts in my appellant's brief, because that's not really allowed ordinarily. I proffered those facts, Your Honor, to show that there is absolutely a case here. There's absolutely a case where Mr. Spencer can overcome Rule 12b-6, assuming that Your Honor's agree with me on the interpretation of Brough as applied to this case. And so all we're doing, if we affirm the district court here, is punishing Mr. Spencer for what honestly, when we holistically look at it, was just his lawyer's bad job. But even that lawyer, once he understood the nature of Schell's motion to dismiss, even that lawyer started alleging the sort of facts that we would expect that he would have alleged. And if Your Honors can just give Mr. Spencer that remedial benefit of the doubt that he seems to be in Title 200 or Title VII, given all the facts and circumstances of the case, I am positive that we can go back to the district court in Texas, we can plead that best case, and who knows, maybe Schell will win at the end of the day on summary judgment or trial. But we'll at least give Mr. Spencer his chance to prove his case. Thank you so much. Is he still working for the other Schell company? Yes, ma'am. Yes, Your Honor. He's been employed the whole time? He has, although at a significantly discounted salary and with premier job responsibilities. Thank you, Mr. Vogelt. And you've saved time for rebuttal. Mr. Neal? Good morning, ma'am. Please, the Court. Let me start with absent questions, what will be a brief discussion of the request to send the case back for amendment. As far as I can tell that this sort of thing is really unheard of in this Court. A representative plaintiff gets a new lawyer and wants a redo on appeal. It's essentially a motion for leave to amend filed for the first time on appeal, but you're in a position of a court of first view, not of review, the opposite of what you are. There are numerous cases in this Court where the Court has looked at a motion to dismiss and decided, looked at whether the plaintiff moved for leave to amend, the plaintiff didn't move for leave to amend and the Court then doesn't entertain any discussion about amendment. One of those cases is actually the Great Plains Trust case that opposing counsel relies on for the proposition that this Court has said that normally a plaintiff should be given an opportunity to amend. That's actually not what the case says. It says district courts often give that opportunity, but more than that, the Court then goes on to discuss an exchange in oral argument where the Court had asked whether or not the plaintiff had moved to amend and even though the plaintiff had made an offhand comment in the response that if the district court is inclined to agree with the defendant's motion, we should be able to amend, this Court looked at that in the Great Plains Trust case and said that's not sufficient, so it affirmed the dismissal. I just would suggest that it's a dangerous, maybe too strong of a word, it's an inappropriate thing for the Court to be entertaining the idea that a represented plaintiff can come up on appeal and just ask to throw out everything the prior lawyer did and start over. The system, the judges, the opposing side depends on what the lawyers for the parties do, for both parties in terms of representations, actions, inactions, and admissions, and admissions comes into play in this case, and so I would just suggest that we don't want to start treating these like habeas, ineffective assistance of counsel type cases and entertaining that. Now, moving to, just before I get to the merits, I do want to take issue with one, I appreciate my opponent's approach of not trying to rely on the brand new facts that are stated in the appellate brief, but I disagree with the idea that you only look to the four corners of the complaint. That's absolutely not this Court's case law. You look to the facts that are in the complaint, and you do look to the documents that the defendant attaches to the motion to dismiss, and that comes out in a line of decisions that began with Judge Smith's opinion in the Collins case, and I think 2000 or 2001, was repeated in Billy Royale and repeated in Sly, that we cite the latter two in our brief. The Court can and should consider attachments to the motion to dismiss, and in a sense that's doing the favor for the parties because you're getting these additional facts out there that allows the Court to make an early decision as to whether the claim ought to go forward, and that is not, absolutely not, converting it to a motion for summary judgment when it fits the parameters of what Collins and the other cases said that it's been referred to in the complaint and is central to the complaint and so on, and there's no dispute here that these attachments do that. So what the Court looks at is the allegations in the complaint, the attachments to the motions to dismiss, and possibly the attachments to the response as well. There's a unpublished case, I think, no, actually it's a published case, Brand Canyon Network, Brand Coupon Network, that says you would look to those attachments as well. What you don't look to are all the other things that are just in the briefing below, and so I would ask the Court to reject the idea of going back for amendment, focus on what this Court has long said is appropriate for consideration on a motion to dismiss. Mr., sorry, Mr. Neal, in my view, the strongest argument that your opponent is making is that the district court's granting of the motion to dismiss here depends on an interpretation of the BRUF case. That is . . . that's not right, and the idea is, and this concerns me too, to be frank, that by merely offering, saying, hey look, we'll give you some time to go find another position, that is by definition a reasonable accommodation. I don't think that's what BRUF stands for, and so that's my concern, so help me understand how I could have agreed to affirm the district court's dismissal of the complaint without buying into that. So as to that issue and as to the religious accommodation claim at all, I would suggest to you that applying BRUF and the Horvath decision that came more recently resolve the claim in defendant's favor. There is language in BRUF that suggests before the Court starts talking about the plaintiff rejecting these other opportunities, it certainly does suggest that the giving of the additional time itself is the type of assistance that qualifies as . . . Well, I'm just concerned with a holding that would say as long as I give you some time, that's a reasonable accommodation. I mean, you need more facts, right? You need to understand what's actually going on. Understood. I'm just saying that you can read BRUF to say that, and then you have the other issues that come up. The reason that's not a problem here, you know, even if that isn't what BRUF means, is that the accommodation here worked. He didn't just get 30 days, he got 180 days to begin with, and it worked, because he didn't quit his job and go get another job with another company, as has been suggested. He transferred to another part of Shell, and he's still there. It's all Shell, and the plaintiff . . . and this is where I mentioned earlier that you have to look at what admissions plaintiff's counsel made below. The plaintiff in the response to the motion to dismiss was adamant that he had transferred to another job. He used the word transfer several times, and I'll give you some record sites on this, 111, 113, 117, 123, and he said he was transferred to another job and was accommodated. That's on 111 and 116 of the record. So, over and over and over, the plaintiff took the position that he was transferred to another job. So, in BRUF, you have a situation where the plaintiff was given an opportunity, turned down some jobs, and was fired. Here you have a situation where the plaintiff was given . . . I won't try to do the math, but whatever, 180 days plus the 30 days is . . . was given far more time, and it worked. He was able to transfer to another position. And below they even argued at the time the parties were disputing, it was pre-Hamilton, about what is an adverse employment action in the transfer context. So, the parties were arguing about whether the transfer was an adverse employment action, and there again, when the plaintiff responded, was citing to this Court's decisions about when a transfer is and isn't an adverse employment action. So, again, over and over, made that admission. They can't just come up on appeal and say, I got a new lawyer, now I'm going to disavow that and take the position that I wasn't really transferred, I was fired or had to resign to take a lower paying job. Had Shell backed off of its requirement? Yes. Oh, yes. Like most . . . as far as I know, most companies, that was what the government was recommending at the time. That's what another number of companies did, particularly with a situation where you've got everybody in a confined environment on the offshore rigs. But that . . . I don't know exactly when it went away. Did he go back to his original job now? No, as far as . . . there's nothing in the record as to whether that request has been made, and I don't personally know whether that request has been made. So, that's the key in terms of applying a BRUF, and Horvath reaffirms a little bit different situation. Horvath reaffirms those same principles in BRUF, and so, yes, Judge Duncan, you have those differences, but here those differences actually play in Shell's favor because it was a successful alternative accommodation. Now, to be sure, the other side, Mr. Spencer, does say and complain that he is making less money. It's a little bit ambiguous whether that's correct or not. That's based on one attachment to the response that's a little bit hard to read, but even if you accept that as true, both Horvath and BRUF do say explicitly, and I think they cite some other cases that say moving to a lower-paying job is still an alternative accommodation. That doesn't keep it from being an alternative accommodation. Undue hardship was mentioned. That is not an issue in this case. The Supreme Court, in the Hinsonia v. Spielbrook decision, said that when there's an alternative accommodation, the court doesn't reach the question of whether the original requested accommodation would or wouldn't be an undue hardship. As far as the . . . there was a mention that the alternative accommodation is an affirmative defense. At bottom, I don't think that really matters because in BRUF, we're relying basically on the same situation in BRUF with those differences we've talked about. The court actually overturned a jury verdict and granted judgment as a matter of law. It doesn't matter, but I don't think that's correct. Undue hardship may be an affirmative defense, but providing an alternative accommodation is not an affirmative defense, so it's not subject to any type of a heightened review on a 12B6 motion. There's some language, sort of precursor language, in this Court's Davis v. Fort Bend case that would sort of refer to both of those as being affirmative defenses, but then it goes on. It's focusing only on undue hardship. In any case, the Supreme Court's EEOC v. Abercrombie decision, 575 U.S. 768, in footnote 2 of the majority opinion, says that it's clear that the failure to accommodate in a religious accommodation context is the plaintiff's burden, just like it is under the Americans with Disabilities Act. If an employer comes in and they say, we did not fail to accommodate you because we provided you with an alternative accommodation that's acceptable under the law, that's just beating and defeating the plaintiff's claim, the plaintiff's burden. That's not an affirmative defense. As far as reasonable accommodation normally being a question of fact, yes, cases say that, although a lot of cases that say that didn't go on to decide it as a matter of law, just like Brough did. When you've got a situation like what we have, where the plaintiff was given multiple extensions that all added up to 180 days and then was successful in transferring to another position, I would suggest to you that's clearly one of those cases that can be decided as a matter of law. You would, I mean, I think you would say that your argument, as I understand it, is we would affirm by saying, not just the complaint, but everything we can consider on a motion to dismiss shows that as a matter of law, the claim fails. That's correct. And you'd have to draw that distinction about what you can consider. The religious combination claim. Yes, that's right. So let me just say a couple of words about the retaliation claim in case that comes up on rebuttal. The Jackson versus Honeywell decision, well, let me back up. There's two potential adverse actions, the PIP, the performance improvement plan, and then the termination warning. I'll start with that one. I mean, that was simply what he was told and everyone was told. You've got this period of time, and if you're not successful, then employment will be terminated. That was said long before any protected activity, as we pointed out in the brief. I think Mr. Spencer says in his brief that, no, no, you didn't give me a date initially. It was later you came in and gave me a date, and that was the retaliatory act. I don't think that . . . well, first, I don't think it would make a difference because he had already been told of the core issue, termination of employment. But also, it's not correct. In the complaint on paragraph 17, record number 8, he was specifically told in January, when his accommodation request was denied, that he would be terminated if he didn't find a new job by May. So he was previously given a date back in January, and his EEOC charge was in April. So when Shell came along and extended that time, that's the opposite of a retaliatory act. They gave him more time until July 16th, I believe. In July, he is when he transferred to the other job, as shown by those record sites that I gave you earlier. As far as the performance improvement plan, it's the court of scene. We rely on the court's Jackson v. Honeywell decision that says that, at least in the context of things like reprimands and written warnings and write-ups and the like, that when the record discloses colorable grounds for that write-up and the plaintiff engaged in protected activity after the action, that it's not a materially adverse employment action under the white Burlington Northern Standard. And the key word there on the performance improvement plan is colorable. It's not undisputed or absolute because, of course, the other judge is going to dispute that. And here on the face, the performance improvement plan, which was one of those attachments to the motion to dismiss, on its face shows colorable grounds. And then after that, the plaintiff engaged in protected activity. And I would note, too, that there's really a causation problem with that one, too, because the allegations of the complaint and the response, nothing even says that the decision-maker who issued that performance improvement plan had any idea about an EEOC charge, or even that Shell, as a company, had received the EEOC charge that quickly after it was filed. So it suggests to you that . . . Oh, and the other point on the performance improvement plan is one of the attachments to the plaintiff's response is an email asking that he be removed from the performance improvement plan early because he had satisfied it. So it's saying to you, as far as a materially adverse employment action, what the white case said we're looking for is harm, and so there's no harm. And this court has taken a similar approach in the Stewart decision that's cited in the appellant's opening brief, where the court looked and said, well, there were some things there that clearly weren't adverse actions, and then there was something that could have been, but the court said, but we've looked at it, and there's clearly no harm that arose from that action. So the court held that it was not an adverse action under the white standard. And you'd say the same thing about that here. He was put on the performance improvement plan, which, by the way, in, I think, the reply brief on the other side said, that had nothing to do with the vaccine issue. It was completely different issues. He was put on that performance improvement plan. He was removed from it early, and so I don't see how you can say that there's harm in the sense of a materially adverse employment action there. Unless the court has any further questions on any of the issues, I'll cede my time and sit down. All right. Thank you, Mr. Neal. Thank you. Mr. Verbal Chance for rebuttal. Thank you, Your Honors. Several quick points. On the retaliation issue, which I didn't get to talk about very much before, let me just say this. The Honeywell case does not appear to be, for the proposition that my colleague is using it for, does not appear to be good law. It conflicts with prior Supreme Court precedent in Burlington Northern v. White, in which the Supreme Court only said that a retaliatory act must be such that it would dissuade a reasonable worker under the circumstances to go and complain. It did not say that it actually had to dissuade the actual worker in question. This court sided favorably to that decision in the Stewart case that my colleague just brought up. I think that, well, it doesn't matter what I think about that. The reality is, if the test is that a worker has to be so dissuaded that they would never complain for them to have an actual retaliatory claim, that we would have no retaliatory claims, because as a conditioned precedent to bringing a claim, you have to file a charge of discrimination with the EEOC. So obviously, there's a disconnect there. But regardless, you don't take my word for it. You take the Supreme Court's word for it, and you take this Court's earlier decision in the Stewart case, which predated Honeywell by about 10 years. Number two, the only reason why Shell respectfully attached those exhibits to their motion to dismiss was because they did not, because Tim Spencer did not allege the sort of things that they wanted him to allege to try to convince the district court that their accommodation was reasonable in the first place or that the PIP or the termination warning wasn't retaliatory based on causation. If they had just stuck to what Mr. Spencer said, there wouldn't have been a case. So they want to have their cake and eat it too. They want to be able to give new facts to the court that they can then pin their motion to dismiss on, but they don't want to allow Mr. Spencer to come back in his reply brief and supply the critical fact, holistically, which is that he was forced to take another job with another employer because they were going to fire him. And it is not correct, and this is not in the record, and everyone in this room that knows anything about corporate structure knows it's true. Shell Pipeline Company is not the same employer as Shell Exploration Company. Shell Exploration Company was going to fire Tim Spencer if he didn't comply with their denial of his reasonable accommodation, and the only way that he got out of it is he just found a new job with a new employer. The fact that they're maybe wholly owned subsidiaries of some parent company is irrelevant to the Title VII analysis. This court, 40 years ago, said that it disapproved of the idea that an employer can force an employee to choose between a forced resignation and termination. In fact, I'm so tickled by the quote that I wrote it down. The court said that an employer should not be allowed to make an employee choose between the sila of voluntary resignation and the carby . . . Thank you. And that's from the Fowler case in 1986. At the end of the day, what we are left with is this. Is it fair that a district court allows a defendant to supplement a motion to dismiss with facts outside the four corners of a petition—I'm sorry, a complaint—but not consider, apparently, reply arguments that the plaintiff uses to meet those claims? Is it fair to permit a pro se plaintiff a guaranteed right to amend at least one time but not a represented plaintiff when there is no functional difference between him and his poor lawyer and the pro se plaintiff? And is it fair when everyone in the courtroom knows that the plaintiff is trying to supplement his case to deny leave to amend? And then finally, to Your Honor's point, I believe that Tim Spencer should get his fair chance and that this Court should reverse. But if the Court is not inclined, please do not say anything that would give credence to this idea that Brough has this expansive rule that denies all religious objectors any sort of reasonable accommodation. Thank you so much. All right. Thank you, Mr. Vogel. To answer your case, and both of today's cases are under submission, and the Court is in recess under the usual order.